UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBYN HARPER and JOHN HARPER, <br><br> Plaintiffs, <br> v. <br><br> COLLECTION BUREAU OF WALLA WALLA, INC., *et al.*, <br><br> Defendants. | CASE NO. C06-1605-JCC <br><br> ORDER |

This matter comes before the Court on Defendants' motion for summary judgment (Dkt. No. 22, 30) and Plaintiffs' cross-motion for summary judgment (Dkt. No. 34), along with the responses, replies, supporting declarations and exhibits thereto.[1] Included in these filings were motions by each party to strike certain documents filed by the opposing party. (Dkt. No. 34, 37, 38.)

---

[1] Plaintiffs' "Motion for Summary Judgment and Reply to Summary Judgment and Motion to Strike" (Dkt. No. 34), presumably intended as their Response to Defendants' summary judgment motion, was filed on August 30, 2007, one day before the motion's noting date and three days after Plaintiffs' Response was due. *See* Local Rule CR 7(d)(3) ("Any opposition papers shall be filed and served not later than the Monday before the noting date."). Nevertheless, in light of the Federal Rules' policy favoring the resolution of cases on their merits, the Court declines to strike Plaintiffs' "Reply."
The Court notes, however, that this is the second time Plaintiffs have failed to comply with the Local Rules. (*See* Dkt. No. 36.) Plaintiffs are hereby put on notice that any future failure to comply with federal or local rules may result in the issuing of sanctions, including fees and costs incurred by the Defendants as a result of Plaintiffs' actions.

ORDER – 1

1  Having considered the documents filed and the record before the Court, and deeming oral

2  argument unnecessary, the Court hereby DENIES the parties' motions to strike, GRANTS IN PART and

3  DENIES IN PART Defendants' Motion for Summary Judgment (Dkt. No. 22, 30), and GRANTS IN

4  PART and DENIES IN PART Plaintiffs' Cross-Motion for Summary Judgment (Dkt. No. 34) as follows.

## I. BACKGROUND

This action arises out of a series of debts allegedly owed by Plaintiffs John and Robyn Harper, incurred or affirmed from March 2002 through April 2003. In all, ten separate debts are at issue, each owed to individuals or entities in the Walla Walla area. Briefly, the underlying debts are as follows: (1) a debt owed to Les Schwab, which was reaffirmed by Plaintiffs in bankruptcy;[2] (2) a debt owed to Walla Walla Valley Federal Credit Union, based on a contract signed by Mr. Harper in Walla Walla (Dkt. No. 26 at 53); (3) a debt owed to City County Ambulance (Am. Compl. ¶ 11b (Dkt. No. 10)); (4) a debt owed to Walla Walla District Court, in the form of a fine levied upon Mr. Harper, the result of a criminal charge (*Id.* ¶ 11c); (5) and (6) debts owed to Drs. Kenneth Isaacs and Thomas V. Maroldo, which arise from treatment Mr. Harper received while incarcerated in 2002 (*Id.* ¶ 11d & e); and (7), (8), (9) and (10) debts owed respectively to Aziz's Chevron, Loneys Harvest Foods, Walla Walla Farmer's Coop-Convenience, and Singer's Chevron, all based on checks signed by Mr. Harper in Walla Walla. (*Id.* ¶ 11g(i).)

It is undisputed that Plaintiffs are legally married and were so during the time period in question. (Robyn Harper Decl. ¶ 5 (Dkt. No. 34-2).) Although Plaintiffs contend that their relationship has had its difficult periods and that they have spent time living apart, they admit that they have never filed for legal separation or divorce. (John Harper Ans. to Interrogs. 2 (Dkt. No. 23 at 21); Robyn Harper Ans. to Interrogs. 2 (Dkt. No. 23 at 34).)

---

[2] Plaintiffs admit that they owe this debt and that it is based on a signed contract. (Am. Compl. ¶ 11f (Dkt. No. 10 at 7); Robyn Harper Decl. ¶ 3 (Dkt. No. 34-2).)

ORDER – 2

Defendant Collection Bureau of Walla Walla ("CBWW") is the licensed collection agency to whom the Harpers' creditors assigned the responsibility of collecting these debts. (Cliff Carlson Decl. ¶ 2 (Dkt. No. 26).)[3] CBWW first filed an action in Walla Walla District Court seeking repayment of the debts on June 23, 2003. (*Id.* ¶ 7.) When CBWW was unable to locate and serve the Harpers, the case was dismissed without prejudice for want of prosecution in 2005. (*Id.* ¶ 10.) Not long after the case was dismissed, CBWW obtained a Whatcom County address for the Harpers and eventually initiated a new debt collection action, again in Walla Walla District Court. (Walla Walla Dist. Ct. Compl. (Dkt. No. 10-2 at 3).) Both Mr. and Mrs. Harper were served with the summons and Complaint by the Whatcom County Sheriff. (Dkt. No. 26 at 48, 51.) Trial was set for November 6, 2006. On that date, the Harpers appeared and served CBWW's attorney Gregory Lutcher[4] with the Complaint in the instant action. (Gregory Lutcher Decl. ¶ 9 (Dkt. No. 25).) Mr. Lutcher struck the trial date upon receiving the federal Complaint, however, the state action remains pending. (*Id.* ¶ 9, 11.) Plaintiffs apparently have not moved to dismiss the state action or any claim therein.

Plaintiffs' Amended Complaint, filed in February 2007, alleges numerous violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Washington Collection Agency Act ("WCAA"), WASH. REV. CODE § 19.16 *et seq.*, and the Washington Consumer Protection Act ("WCPA"), WASH. REV. CODE § 19.86 *et seq.* Specifically, Plaintiffs accuse Defendants of violating the FDCPA, WCAA and WCPA by (1) bringing the collection action in an inappropriate venue; (2) failing to verify the debts as requested; (3) serving Plaintiffs with an invalid summons; (4) suing Mrs. Harper on debts solely attributable to Mr. Harper; (5) suing on debts for which the statute of limitations had expired; (6) reporting an earlier collections action (dismissed for failure to perfect process) to credit agencies as

---

[3] Cliff Carlson is CBWW's owner and President and serves as the business' Collection Manager. (Carlson Decl. ¶ 2 (Dkt. No. 26).)

[4] Mr. Lutcher is also a co-defendant in this action. He is a principal in the Walla Walla law firm Lutcher, Phillips and Erm, and has represented CBWW since 1982. (Lutcher Decl. ¶¶ 1, 2 (Dkt. No. 25).)

ORDER – 3

reduced to judgment; (7) suing on a debt incurred by Mr. Harper as the result of a conviction in the same court that convicted him; and (8) self-adjudicating the handling fee on those debts that arose out of dishonored checks. (Am. Compl. ¶¶ 13a–h (Dkt No. 10).)

Defendants deny that they violated the FDCPA, WCAA or WCPA in attempting to collect the debts allegedly owed by Plaintiffs. (CBWW Ans. 5–6 (Dkt. No. 11); Lutcher Ans. 3–4 (Dkt. No. 16).) Moreover, Defendant Lutcher denies that he is a "debt collector" within the meaning of the FDCPA. (Lutcher Ans. ¶ 5 (Dkt. No. 16).) In addition, CBWW asserts counterclaims for bad faith litigation and harassment and non-payment of the underlying debts. (CBWW Ans. 7–8 (Dkt. No. 11).)[5] The parties have filed cross-motions for summary judgment, which include motions to strike various materials presented by the other side. The Court first addresses the motions to strike.

## II.  MOTIONS TO STRIKE

Pursuant to Federal Rule of Civil Procedure 12(f), the Court may, "[u]pon motion made by a party before responding to a pleading. . . order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Plaintiffs move to strike CBWW's entire summary judgment motion, claiming "it is a screed against the Harpers and the statements in it belittling them are irrelevant to the liability issues in this motion." (Dkt. No. 34 at 17.) Plaintiffs also ask the Court to strike Steve Stolle's declaration (Dkt. No. 23) as hearsay. CBWW and Mr. Lutcher request the Court strike or disregard portions of Mrs. Harper's declaration (Dkt. No. 34-2) as either hearsay or stating a legal conclusion. Each of these requests will be addressed, in turn.

Plaintiffs waived any and all objections to the content of Defendants' summary judgment motion and Mr. Stolle's declaration when they declined to file their Response (which, when eventually filed, included the motion to strike) on time. Plaintiffs' Response to the allegedly scurrilous summary judgment motion was filed three days after it was due. Rule 12(f) requires the motion be made by the objecting

---

[5]Plaintiffs have also filed a motion to dismiss CBWW's counterclaim seeking payment of the debts. (Dkt. No. 31.) The Court will address Plaintiffs' motion to dismiss in a separate order.

ORDER – 4

party before responding to the offending pleading. FED. R. CIV. P. 12(f). While Local Rule 7(g) explicitly provides that motions to strike are to be included in the responsive brief, not made in a separate motion, both the local and federal rules clearly intend that the motion to strike be made at the latest by the time the responsive pleading is due. Similarly, objections to the admissibility of evidence relied upon in a summary judgment motion are waived unless made in a timely fashion in a motion to strike or otherwise. *See FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 484–85 (9th Cir. 1991) (citing *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979)).

Even if Plaintiffs' motion to strike was timely, precisely what parts of the summary judgment motion and Mr. Stolle's declaration Plaintiffs take issue with are unclear. Motions to strike are disfavored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc.*, 758 F.Supp. 1335, 1339 (N.D. Cal. 1991). As Plaintiffs fail to make clear what they wish stricken and why, it is impossible for the Court to find that the matter to be stricken has no possible bearing on the subject matter of the litigation. For the same reason, Mr. Lutcher's request to strike unidentified allegations regarding Mr. Lutcher's liability, which are contained in Plaintiffs' summary judgment motion, must be denied. In contrast, CBWW precisely identifies portions of Mrs. Harper's declaration, which it requests the Court either strike or disregard, as hearsay.[6] (Dkt. No. 37 at 18). The Court did not consider any of these statements in ruling on the cross-motions for summary judgment, therefore, it declines to rule on their admissibility.

### III.  CROSS-MOTIONS FOR SUMMARY JUDGMENT

---

[6] CBWW objects to the following assertions by Mrs. Harper: (1) "My husband only signed the four checks and the bank account agreement with Walla Walla Valley Federal Credit Union" (Robyn Harper Decl. ¶ 4 (Dkt. No. 34-2)); (2) "She then told me that she had $5,000.00 of debt that my husband owed and that she was going to hold me responsible for repayment because she knew I paid my bills" (*Id.* ¶ 6); and (3) "They whispered that they did not have the witnesses" (*Id.* ¶ 7). (CBWW Resp. 18 (Dkt. No. 37).) Mr. Lutcher shares CBWW's objection to #3, above, and also objects to Mrs. Harper's statement, "[t]hese debts were of no benefit to either me or our children."(Robyn Harper Decl.¶ 5 (Dkt. No. 34-2)). (Lutcher Resp. 11 (Dkt. No. 38).)

ORDER – 5

### A.   Legal Standard

Summary judgment is not warranted if a material issue of fact exists for trial. *Warren v. Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995). The underlying facts are viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "[S]ummary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. *Id.* at 324.

Where the parties file cross-motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Fair Hous. Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting 10A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2720, at 335–36 (3d ed.1998)). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Riverside Two*, 249 F.3d at 1136.

### B.   The FDCPA

The FDCPA seeks "to eliminate abusive debt collection practices by debt collectors . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692. The Act applies to debt collectors "who [use] any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," 15

ORDER – 6

U.S.C. § 1692a(6), and specifically proscribes certain practices found by Congress to be deceptive, unfair, or abusive to customers. In the original FDCPA, passed in 1977, attorneys were expressly excluded from the definition of "debt collector" under the Act, but in 1986, Congress amended the Act to remove that exemption. In its current form, the FDCPA may be applied to lawyers "who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995).

The FDCPA does not protect every imaginable debt; instead, it is limited to consumer debts, specifically, "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are *primarily for personal, family, or household purposes,* whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5) (emphasis added). The Federal Trade Commission's Staff Commentary to the Act opines that certain categories of obligations are excluded from this definition, including unpaid taxes and fines, along with alimony, tort claims, and non-pecuniary damages. FTC Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50101 (Dec. 13, 1988).

The FDCPA is considered a "strict liability" statute, in that in order to be entitled to damages, a consumer need not show that the debt collector intentionally, fraudulently, or knowingly violated the Act. *See Hunt v. Check Recovery Sys., Inc.*, 478 F.Supp.2d 1157, 1169 (N.D. Cal. 2007). Moreover, so long as the debt is the sort of consumer debt defined and protected by the Act, whether the consumer actually owes the debt, the reasons for the consumer's delinquency, or the consumer's actions or motives for avoiding payment, are all irrelevant. *See, e.g.*, *Baker v. C.G. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982). The FDCPA " is designed to protect consumers who have been victimized by unscrupulous debt collectors," *id.*; the statute does not provide an exception allowing the use of otherwise disapproved tactics in response to bad behavior on the part of the consumer. However, a court may impose sanctions in the form of attorney's fees on any person — including a consumer — who brings a suit under the FDCPA "in bad faith and for the purpose of harassment[.]" 15 U.S.C. § 1692k(a)(3).

ORDER – 7

### *1.   Mr. Lutcher as a "Debt Collector" Under the FDCPA*

As an initial matter, the Court finds that Plaintiffs fail to demonstrate that Mr. Lutcher is, as a matter of law, properly classified as a "debt collector" under the FDCPA. Plaintiffs, in fact, make no argument to this effect; instead, they present Mr. Lutcher's status as a debt collector as an "undisputed fact" in their cross-motion for summary judgment. (Pls.' Summ. J. Mot. & Reply 6 (Dkt. No. 34).) Mr. Lutcher actually disputes this, and has done so since filing his Answer. (Lutcher Ans. ¶ 5 (Dkt. No. 16).) Neither Plaintiffs nor Mr. Lutcher briefed the issue of whether Mr. Lutcher "regularly" engaged in consumer-debt-collection activity, as required by *Heintz*, 514 U.S. at 299. The Court is unable to grant summary judgment against Mr. Lutcher on any of Plaintiffs' claims, until his status under the FDCPA is resolved. Thus, to the extent the Court finds for Plaintiffs in this Order, that finding of summary judgment is only effective against Defendant CBWW.

### *2.   Summons*

Plaintiffs argue that Defendants violated the FDCPA when Mr. Carlson, in his capacity as CBWW's Collection Manager, signed the summons that was served on the Harpers in the Walla Walla District Court action. (Am. Compl. ¶ 13c (Dkt. No. 10); Summons 2 (Dkt. No. 26 at 40).) Plaintiffs claim that because Mr. Carlson was not named individually as a party in the action, he could not sign the Summons. They argue that Mr. Carlson's signature on the summons was "not legal process" (Am. Compl. ¶ 13c (Dkt. No. 10)), that by signing, Mr. Carlson was "attempting to practice law" (Pls.' Summ. J. Mot. & Reply 11 (Dkt. No. 34)), and that somehow, Mr. Carlson's signature amounted to an attempt by CBWW to appear *pro se* (*Id.* 10–11). These actions, Plaintiffs argue, violate §§ 1692d, 1692e(3), (5), (9), & (13), and 1692f of the FDCPA. In addition, Plaintiffs submit that the FDCPA violations constitute a violation of multiple provisions of the WCAA and the WCPA. (Am. Compl. ¶ 13c (Dkt. No. 10); Pls.' Summ. J. Mot. & Reply 11 (Dkt. No. 34).)

Plaintiffs largely leave the Court guessing as to what specifically in the numerous provisions it cites establishes that a corporate officer's signature on a summons constitutes a violation of the FDCPA.

ORDER – 8

The civil rules for Washington courts specifically provide that "the plaintiff or his attorney" is to sign the summons. WASH. CR 4(a)(1); WASH. CRLJ 4(a)(1). Under traditional rules of agency law, Mr. Carlson, as President and in his capacity as Collections Manager, was certainly empowered to sign the summons on behalf of CBWW, the named plaintiff in the state action. *See, e.g.*, Restatement (Third) of Agency § 3.03 cmt. e (2006) ("The corporate form of organization makes it necessary that a corporation act through agents[.]"). Plaintiffs cite absolutely no authority to the contrary.

Still, Plaintiffs contend that when Mr. Carlson signed the summons, CBWW violated § 1692d, which forbids a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Although the prohibited conduct listed in the provision is exemplary and not exclusive, under the *ejudem generis* rule of statutory construction[7] the nature of the listed conduct is instructive. The Court rejects Plaintiffs' implication that Mr. Carlson's signature — even if it were not authorized by Washington law — is in any way akin to the use of "violence or other criminal means," "obscene or profane language," or repeatedly calling a person's home with the intent to harass them. *See* 15 U.S.C. §1692d(1), (2) & (5).

Plaintiffs also allege that when Mr. Carlson signed the summons, CBWW violated § 1692e of the FDCPA, which prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Specifically, Plaintiffs assert that Mr. Carlson's signature amounted to a false representation or implication that Mr. Carlson was an attorney, 15 U.S.C. § 1692e(3); the summons was a threat to take action that cannot legally or is not intended to be taken, 15 U.S.C. § 1692e(5); the summons was a use or distribution of a written communication that simulated or falsely represented to be a document authorized, issued or approved by a court, official, or agency of a State, or created a false impression as to its source, authorization, or

---

[7] "Under the principle of *ejusdem generis*, when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration." *Norfolk & W. Ry. Co. v. Am. Train Dispatchers' Ass'n*, 499 U.S. 117, 129 (1991).

ORDER – 9

approval, 15 U.S.C. § 1692e(9); and that the summons was falsely represented as legal process, 15 U.S.C. § 1692e(13).

As previously noted, Mr. Carlson signed the summons not in his individual capacity, but rather as an agent acting on behalf of the corporation. Furthermore, nowhere on the summons does Mr. Carlson state or imply that he is an attorney; he is specifically identified as CBWW's "Collection Manager." (Summons 2 (Dkt. No. 26 at 40).) The summons was, in fact, a summons — it was not a simulation of a summons or a false representation of a summons — and it was served with a genuine Complaint, which was signed by Mr. Lutcher, a licensed attorney. (Returns of Service (Dkt. No. 26 at 48–51); Walla Walla Dist. Ct. Compl.3 (Dkt. No. 26 at 37).) Mr. Lutcher also appeared on behalf of CBWW in the state court. (Lutcher Decl. ¶ 9 (Dkt. No. 25).) Accordingly, Plaintiffs claim that CBWW attempted to appear *pro se* is unfounded.

For the same reasons, Plaintiffs have failed to introduce any evidence that would enable a fact finder to conclude that Defendants violated the relevant sections of the WCAA. *See* WASH. REV. CODE § 19.16.250(5) (prohibiting licenced debt collector from performing any act "constituting the practice of law"); WASH. REV. CODE § 19.16.250(13) (prohibiting communication with debtor "through use of forms or instruments that simulate . . . judicial process"); WASH. REV. CODE § 19.16.250(14) (prohibiting communication implying debtor's obligation may be increased by attorneys' fees or other fees which may not legally be added); WASH. REV. CODE § 19.16.250(15) (prohibiting threats to take action against debtor which cannot legally be taken). Finally, because Plaintiffs advance no basis for their claim that Mr. Carlson's signature on the Summons violated the WCPA, other than by and through violations of the FDCPA or the WCAA, that allegation is also without merit. The Court hereby GRANTS summary judgment for Defendants on all of Plaintiffs' claims related to Mr. Carlson's signing the summons.

### 3. *Verification and Notice*

Pursuant to the FDCPA, a debt collector must generally provide the debtor, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt," with

ORDER – 10

certain information about the debt and the debtor's rights, including the debtor's right to obtain verification of the debt. 15 U.S.C. § 1692g(a). This notice provision specifies that the debtor's request for verification of the debt is to be in writing. 15 U.S.C. § 1692g(a)(4).

Plaintiffs allege two violations of this section. First, Mrs. Harper asserts that she first learned of the debts (with the exception of the Les Schwab debt) in late 2005. She states that she does not remember receiving a notice from CBWW that she could ask for verification of the debt. (Robyn Harper Decl. ¶ 6 (Dkt. No. 34-2).) Second, Plaintiffs assert that Defendants "failed to verify the debts even though plaintiffs requested verification" by telephone. (Am. Compl. ¶¶ 8, 13b.)

Despite Mrs. Harper's assertion to the contrary, the Notices of Check Dishonor from CBWW comply with the notice requirement of 15 U.S.C. § 1692g(a). Plaintiffs attached these notices, dated in 2002, to their Amended Complaint. (Dkt. No. 10-2 at 6, 9, 12 & 15.)[8] However, as Mrs. Harper swears under penalty of perjury that she never received a § 1692g notice from CBWW as to the remainder of the debts, an issue of material fact exists as to whether CBWW complied with § 1692g(a)'s notice requirement for these debts. Accordingly, the Court GRANTS Defendants' motion for summary judgment on the issue of notice as to the underlying check and Les Schwab debts. However, in the absence of some evidence that such notices were sent to Plaintiffs for the six remaining debts, the Court DENIES both parties' motion for summary judgment on the issue of notice at this time.

As for Plaintiffs' claims that Defendants failed to verify the debts, Defendants have the better of this argument. Both 15 U.S.C. § 1692g(a)(4) and the Notices of Check Dishonor that Plaintiffs attached to the Amended Complaint plainly state that the debtor's request for verification is to be in writing. Plaintiffs claim Mrs. Harper requested verification over the telephone. (Am. Compl. ¶ 8 (Dkt. No. 10).) Thus, even taking the facts in the light most favorable to Plaintiffs, Plaintiffs' claims that Defendants violated 15 U.S.C. § 1692g(a)(4) fail as a matter of law. The Court therefore GRANTS Defendants

---

[8] These Notices of Check Dishonor are for the debts to Aziz's Chevron, Loneys Harvest Foods, Walla Walla Farmer's Coop-Convenience, and Singer's Chevron, respectively.

ORDER – 11

summary judgment as to all claims based upon Defendants' failure to provide verification in compliance with the FDCPA.

### *4.   Debt Owed to Walla Walla District Court*

Plaintiffs acknowledge that the fine that Mr. Harper incurred as a result of his arrest for driving with a suspended license is not a consumer debt, and as such is not protected by the FDCPA. (Pls.' Summ. J. Mot. & Reply 7 (Dkt. No. 34).) Thus, Plaintiffs' claim that Defendants violated the FDCPA by suing in Walla Walla District Court to collect on a debt nominally owed to that court must fail. (Am. Compl. ¶ 13g (Dkt. No. 10).) Similarly, Plaintiffs advance no evidence supporting their contention that suing on that debt violated § 250(15) of the WCAA. WASH. REV. CODE § 19.16.250(15) (prohibiting a licensed debt collector from "[threatening] to take any action against the debtor which the licensee cannot legally take at the time the threat is made."). Thus, the Court GRANTS Defendants' motion for summary judgment as to all of Plaintiffs' claims related to the Walla Walla District Court debt.

### *5.   Venue*

Section 1692i(a)(2) provides that a debt collector may generally bring an action to collect a consumer debt:

> only in the judicial district or similar legal entity—
> (A) in which such consumer signed the contract sued upon; or
> (B) in which such consumer resides at the commencement of the action.

15 U.S.C. § 1692i(a)(2). Plaintiffs acknowledge that Walla Walla District Court was a proper venue for suit on six of the underlying debts (Pls.' Summ. J. Mot. & Reply 12 (Dkt. No. 34)), but argue that the FDCPA's venue provision was violated when three debts[9] "not based upon a contract signed in Walla Walla County" (Am. Compl. ¶ 13a (Dkt. No. 10)) were included in the suit, because Plaintiffs no longer

---

[9] Plaintiffs actually argue that four debts are not based upon a contract signed in Walla Walla County, and thus collection suits brought in Walla Walla county were improper. However, one of these debts is the fine owed to Walla Walla District Court as a result of Mr. Harper's arrest. As addressed above, this debt is not a consumer debt and, as such, is not protected by the FDCPA.

ORDER – 12

resided in Walla Walla County at the time the action was commenced.[10] The debts at issue are those to City County Ambulance, Dr. Kenneth Isaacs, and Dr. Maroldo. Plaintiffs argue that because these debts were not based on contracts, a plain reading of the FDCPA requires any suit seeking to collect on them be filed in Whatcom County, where Plaintiffs resided at the time the most recent action commenced. Furthermore, Plaintiffs assert that a violation of the FDCPA constitutes a violation of the WCAA and the WCPA.

Defendants argue that because Walla Walla County was admittedly a proper venue for a collection action on some of the debts, the Court should find that venue was proper on all of the debts. This is because, Defendants argue, § 1692i(a)(2) does not preclude application of Federal Rule of Civil Procedure 18(a) "or its state procedural equivalents." (CBWW Resp. 7 (Dkt. No. 37).) Rule 18(a) governs joinder of claims in the federal context and allows parties to join "as many claims . . . as the party has against an opposing party" in a single action. FED. R. CIV. P. 18(a). Washington's Civil Rules, for both Superior Court and Courts of Limited Jurisdiction, mirror the federal rule. WASH. CR 18(a); WASH. CRLJ 18(a). The collection action here was brought in Walla Walla District Court, thus the issue is whether the FDCPA's venue provision preempts the state joinder rules.

By its terms, the FDCPA provides that there are "only" two venues in which a debt collection action covered by the Act may be brought: in the judicial district where the consumer signed the contract sued upon, or where the consumer resides at the commencement of the action. 15 U.S.C. § 1692i(a)(2). While it is true that the FDCPA "does not *explicitly require* separate lawsuits in different counties when 15 U.S.C. 1692i(a)(2) is satisfied for some, but not all, of the debts," (Lutcher Resp. 6 (Dkt. No. 38)) (emphasis added), application of the state joinder rules would allow a third venue—any judicial district

---

[10] Plaintiffs originally alleged that venue was improper as to all of the claims except the Les Schwab debt (Am. Compl. ¶ 13a (Dkt. No. 10)); however, in their Reply, Petitioners concede that venue was also proper as to the Credit Union debt and the four checks (Pls.' Summ. J. Mot. & Reply 12 (Dkt. No. 34)).

ORDER – 13

where the debt collector can properly bring a debt collection action for a different debt against the same consumer. This result would directly conflict with the FDCPA's venue provision, which plainly provides for "only" two venues. Moreover, Defendants are wrong to argue that preemption of state joinder laws would require debt collectors "to file individual lawsuits on every debt owed . . . out of fear that liability under the [FDCPA] would result . . . or that a court would dismiss claims on a group of debts if venue was improper as to any one of them." (*Id.*) Debt collectors are free to bring a single action seeking collection of all debts owed by the same consumer in the judicial district where the consumer resides at the time of the commencement of the action. Such a result is wholly consistent with the purpose of the FDCPA's venue requirement: "to prevent debt collectors from bringing collection suits in forums located at great distances from debtors' residences." *Dutton v. Wolhar*, 809 F.Supp. 1130, 1139 (D. Del. 1992) (citing S.Rep. No. 382, 95th Cong. 1st Sess. 5 *reprinted in* 1977 U.S. Code Cong. & Admin.News 1695, 1699). Nor is Defendants' argument that preemption of state joinder rules "would allow a collection agency collecting on multiple debts against the same consumer to institute simultaneous multiple lawsuits in different courts based upon where various checks or other contracts were signed, in addition to where the debtor lives" (CBWW Resp. 8 (Dkt. No. 37)) persuasive. Even if the FDCPA's venue provision did not preempt conflicting state rules, the consumer would be no better protected from a debt collector who chose to bring multiple lawsuits, all in compliance with the FDCPA's venue provision: state joinder laws may allow parties to join all claims against another party in a single action, but they do not require joinder.

For the foregoing reasons, the Court finds that application of the state's joinder rules is in direct conflict with the FDCPA's plain language, and is therefore preempted. Plaintiffs assert that the debts allegedly owed to City County Ambulance, Dr. Kenneth Isaacs, and Dr. Maroldo were not based upon contracts entered into in Walla Walla County, and Defendants offer no evidence to rebut this assertion, instead stating only that these debts "are on accounts receivable generated in the ordinary course of . . . business in Walla Walla." (CBWW's Summ. J. Mot. 11 (Dkt. No. 22).) Although Defendants imply that

ORDER – 14

Plaintiffs may not have moved to Whatcom County prior to the filing of the underlying debt collection action (*id.* 9), they introduce no supporting evidence and as such fail to demonstrate that the matter of Plaintiffs' residency at the time the action was filed remains a genuine issue for trial. Accordingly, the Court GRANTS Plaintiffs' summary judgment to the extent it finds that CBWW violated the FDCPA when it filed a collection action in Walla Walla County seeking repayment of the debts owed to City County Ambulance, Dr. Kenneth Isaacs, and Dr. Maroldo.

Plaintiffs further urge that a violation of the FDCPA's venue provision violates Washington law "under RCW 19.16.250(15) of the WCAA which through RCW 19.16.440 becomes a violation of RCW 19.86.020." (Pls.' Summ. J. Mot. & Reply 13 (Dkt No. 34).) Plaintiffs provide no further explanation as to how these laws were violated, beyond this conclusory and confused statement. As such, Plaintiffs fail to make a showing that they are entitled to judgment as a matter of law and the Court DENIES Plaintiffs' summary judgment on the question of whether this violation of the FDCPA's venue provision also constituted a violation of Washington law.

### 6. *Suing Mrs. Harper*

Plaintiffs' Amended Complaint charges that Defendants:

> violated 15 U.S.C. §§ 1692d, 1692e[,] including (2), (5) & (10) & 1692f including (1) by suing Mrs. Harper for debts on which she is not liable. For the same reason they violated RCW 19.16.250 including (15) and in violating it also violated the FDCPA provisions in this paragraph.

(Am. Compl. ¶ 13d (Dkt No. 10).) Plaintiffs' motion for summary judgment appears to amend this allegation so that Plaintiffs now argue that "[Defendants] suing [Mrs. Harper] when they knew she was separated violates 15 U.S.C. [§] 1692(e)(2)(A)." (Pls.' Summ. J. Mot. & Reply 14 (Dkt. No. 34).) This FDCPA provision forbids a debt collector from using "any false, deceptive, or misleading represenation or means in connection with the collection of any debt," with subsection (2)(A) specifically prohibiting "[T]he false representation of . . . the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A).

The parties agree that Mrs. Harper told an employee of CBWW that she and her husband were

ORDER – 15

separated when Mr. Harper incurred some of the debts at issue in this action. (Carlson Decl. ¶ 5 (Dkt. No. 26); Am. Compl. ¶ 8 (Dkt. No. 10).) Plaintiffs do not dispute that CBWW asked Mrs. Harper to provide it with some form of proof of the separation, which was never provided. (Carlson Decl. ¶ 5 (Dkt. No. 26).) Plaintiffs also admit that they are currently legally married, were legally married during the time period in question (Robyn Harper Decl. ¶ 5 (Dkt. No. 34-2)), and have never filed for legal separation or divorce. (John Harper Ans. to Interrogs. 2 (Dkt. No. 23 at 21); Robyn Harper Ans. to Interrogs. 2 (Dkt. No. 23 at 34).). Still, Plaintiffs argue that because Mrs. Harper "had no knowledge of the debts, the debts did not benefit the community, and there was no community purpose," (Pls.' Summ J. Mot. & Reply 14 (Dkt No. 34)), the debt was not a community obligation. As such, Plaintiffs contend that Defendants were apparently on notice that the debts were not community obligations because Mrs. Harper told them she was separated from Mr. Harper, and as a result, by bringing the collection action against Mr. and Mrs. Harper as a marital community, Defendants somehow falsely represented the character, amount, or legal status of the debts.

      Defendants offer a different test for determining whether a debt incurred during a marriage is a community obligation under Washington law; however, regardless of what test applies, Plaintiffs' argument fails. If Plaintiffs felt the debts at issue should not be considered a community obligation, Plaintiffs should have brought a motion in the district court seeking an order to that effect. Whether a certain debt is a community obligation is (under any of the tests advanced by either party) a fact-specific determination for a court to make. The FDCPA cannot be read to prohibit a debt collector from naming the members of a marital community as joint defendants in a collection action simply because one member of that community has told the collector they are no longer living with their spouse, but refuses to provide any evidence of this fact. Accordingly, the Court GRANTS summary judgment to Defendants with regard to all claims that the FDCPA was violated by naming Mrs. Harper in the action. Similarly, Plaintiffs' state law claims based upon this allegation are also DISMISSED.

      ***7.    Self-Adjudicating Handling Fee***

ORDER – 16

1    In 2002, Defendants sent Mr. Harper Notices of Check Dishonor seeking payment on the four
2 bounced checks, which debts were included in those Defendants sought to collect in the Walla Walla
3 District Court action. (Notices of Check Dishonor (Dkt. No. 10-2 at 6).) These notices requested
4 "payment in full of the amount of [the] dishonored check PLUS A THIRTY DOLLAR HANDLING
5 FEE" within 15 days of the date the notice was postmarked. (*Id.*) (emphasis in original). The notices
6 warned that if payment was not made within 15 days, Mr. Harper would be liable for the following
7 additional amounts:

> 1. Costs of collecting equal to the face amount of the check or $40.00 whichever is the lesser.
> 2. Interest computed at the rate of 12% per annum from the date of dishonor until paid[.]
> 3. In case legal action is instituted costs of suit and reasonable attorney fees as set by the court plus three hundred dollars (300.00) or three times the face amount of the check, whichever is less, by award of the court.

(*Id.*) After Mr. Harper failed to make the payments requested in the dishonor notices, Defendants brought the underlying collection suit which sought, for each of the dishonored checks, (1) the amount of the check, described as a "collecting fee"; (2) a thirty dollar handling fee; (3) a "collection fee" of three times the face of the check or $300.00, whichever is less; (4) 12% per annum interest; and (5) a reasonable attorney's fee in the amount of $20 per check. (Walla Walla Dist. Court Compl. (Dkt. No. 10-2 at 3).)

Plaintiffs argue that the Notices of Check Dishonor and the collection suit violate 15 U.S.C. § 1692e(2)(A) & (10), because they are not in compliance with Washington law. (Pls.' Summ. J. Mot. & Reply 15–16 (Dkt. No. 34) (citing WASH. REV. CODE 62A.3-515 and -520).) Section 1692e(2)(A) prohibits debt collectors from falsely representing "the character, amount, or legal status of any debt," while § 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(2)(A) & (10).

Any claims based upon the Notices of Check Dishonor are time-barred under 15 U.S.C. § 1692k(d), which imposes a one-year statute of limitations from the date of violation on claims brought under the FDCPA. Plaintiffs filed this action in November 2006, over three years after the Notices were

ORDER – 17

issued. Plaintiffs make no argument that the statute of limitations is not properly applied here. Thus, the Court finds any and all of Plaintiffs' claims based upon the Notices of Check Dishonor to be time-barred, and does not reach the question of whether Defendants' Notices complied with Washington Revised Code § 62A.3-520.

Accordingly, the sole remaining issue is whether Defendants' Complaint, filed in the Walla Walla District Court action, sought relief not authorized by Washington Revised Code § 62A.3-515. That statute provides in relevant part:

> If a check . . . is dishonored . . . the payee or person entitled to enforce the check . . . may collect a reasonable handling fee for each instrument. If the check is not paid within fifteen days and after the person entitled to enforce the check or the person's agent sends a notice of dishonor . . . the drawer of the instrument is liable for payment of interest at the rate of twelve percent per annum from the date of dishonor, and cost of collection not to exceed forty dollars or the face amount of the check, whichever is less, payable to the person entitled to enforce the check. *In addition*, in the event of court action on the check, the court, after notice and the expiration of the fifteen days, shall award reasonable attorneys' fees, and three times the face amount of the check or three hundred dollars, whichever is less, *as part of* the damages payable to the person enforcing the check.

WASH. REV. CODE 62A.3-515(a) (emphasis added). Plaintiffs seem to argue, first, that the statute does not provide for the collection of a "reasonable handling fee" in a collection action, but only within a Notice of Dishonor. Second, Plaintiffs argue that the lawsuit requested "far more interest than the 12% per annum on the face value of the check." (Pls.' Summ. J. Mot. & Reply 16 (Dkt. No. 34).) Finally, Plaintiffs appear to argue that Defendants should have made it clear in the Walla Walla District Court Complaint that the court had discretion in setting an award for reasonable attorneys' fees and collection fees. The only authority Plaintiffs cite to support any of this is a case from the Eastern District of California wherein the debt collector sent a letter to the consumer falsely stating that under California law it was entitled to collect certain service fees. *Ballard v. Equifax Check Servs., Inc.*, 27 F.Supp.2d 1201, 1207 (E.D. Cal. 1998).

The case Plaintiffs cite is not on point and the arguments they make are without merit. First, the Court reads the statute to allow for the collection of a reasonable handling fee at any stage of the

ORDER – 18

collection process, including when the debt collector is forced to institute a court action to collect the debt. Through the use of the words "in addition," the plain language of the statute provides for greater awards, "in the event of court action," and Plaintiffs cite no authority to the contrary. Second, on its face, the Walla Walla District Court Complaint requests an award of 12% per annum; the Court is perplexed by Plaintiffs' unsupported allegation that the Complaint requests interest "far more" than this stated amount. Finally, Plaintiffs cite absolutely no authority to support their assertion that Defendants were required to specifically inform the Walla Walla District Court on the face of the Complaint, that the court had discretion to award the fees requested. As such, the Court DISMISSES any and all of Plaintiffs' claims that Defendants violated the FDCPA by "self-adjudicating."

### 8. *Statute of Limitations and Reporting Lawsuit to Credit Reporting Agencies as Reduced to Judgment*

The Court finds that Plaintiffs have conceded that the allegations that Defendants pursued collection on debts for which the statute of limitations had expired (Am. Compl. ¶ 13e (Dkt. No. 10)), and reported a dismissed lawsuit to credit reporting agencies as reduced to judgment (*Id.* ¶ 13f) are without merit. (*See* Pls.' Mot. Summ. J. & Reply 15 (Dkt. No. 34).) As such, the Court DISMISSES any and all claims based upon these allegations.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby:

1. DENIES the parties' motions to strike.

2. GRANTS Defendants' motion for summary judgment and DENIES Plaintiffs' motion for summary judgment as to all claims related to (a) the summons in the underlying collection action; (b) notice with regard to the debts based upon dishonored checks; (c) complying with requests for verification of the debts; (d) the debt owed to Walla Walla district court as a result of Mr. Harper's arrest; (e) naming Mrs. Harper, as a member of the Harper's marital community, as a defendant in the collection action; (f) self-adjudication of the debts; (g) seeking repayment of debts for which the statute of limitations has run; and (h) reporting to credit reporting agencies.

3. DENIES Defendants' motion for summary judgment and GRANTS Plaintiffs' motion for summary judgment against Defendant CBWW on Plaintiffs' claim that Defendant violated the venue provision of the FDCPA when it brought an action seeking to collect the debts

ORDER – 19

allegedly owed to City County Ambulance, and Drs. Isaacs and Maroldo.

4. DENIES both parties' summary judgment motions as to (a) whether the violation of the venue provision as stated in #3, above, also violated Washington law; and (b) whether adequate notice was provided under 15 U.S.C. § 1692g(a) for the debts allegedly owed to City County Ambulance, Drs. Issacs and Maroldo, and the Walla Walla Valley Federal Credit Union.

SO ORDERED this 4th day of December, 2007.

/s/ John C. Coughenour
John C. Coughenour
United States District Judge

ORDER – 20